The plaintiff brings this action to enjoin the defendant from causing his removal from occupancy of the dwelling house at 371 Hawthorne Avenue, Derby, owned by the defendant. Actually the problem presented is different in character than the subject matter of the usual application for a temporary injunction sought by a tenant in these trying days to enjoin his landlord from taking possession. In the latter, and more common situation, the landlord has complied with the requirements of the Office of Price Administration and the official certificate of eviction has been issued by the proper authority after the usual six months' period, and still the tenant finds himself unable to secure other living quarters and imperatively requires an additional margin of time in which to do so.
The controlling question here is whether the house occupied by the plaintiff and his family, and the plaintiff's status in connection with that house, come within any of the exceptions to the rent regulation for housing promulgated by the Office of Price Administration. If they do, the plaintiff fails in this action; if they do not, it is otherwise. The reason why the plaintiff would not be entitled to relief by way of injunction in the one instance is because the defendant as owner would not be required to follow the usual procedure outlined in the regulation as a condition precedent before resorting to eviction proceedings under state law.
The exceptions to the regulation that have a bearing on the question presented, read: "Section 1(b) Housing to which thisregulation does not apply. This regulation does not apply to the following: (1) Farming tenants. Housing accommodations situated on a farm and occupied by a tenant who is engaged for a substantial portion of his time in farming operations thereon. (2) Service employees. Dwelling space occupied by domestic servants, caretakers, managers, or other employees to whom the space is provided as part of their compensation and who are employed for the purpose of rendering services in connection with the premises of which the dwelling is a part."8 F. R. 7323.
Certain subordinate facts, some of which are not in dispute and others of which are determined from the evidence, require a recital. The defendant is the owner of and operates two farms in the Derby and Ansonia areas comprising approximately four hundred acres. These farms are under the management of a single superintendent who in turn has working *Page 361 
under him a dozen or more men who may be termed "farm help." The defendant also owns other properties in the general vicinity of her farms which are not connected with her farming operations.
In 1931 the plaintiff entered the defendant's employ. At the outset his duties were concerned with the patrolling of the farm properties. As the years passed the scope of his duties was enlarged to include work of general "handy man" on the farms who assisted as occasion required with tasks definitely of a farming nature in the more prosaic sense (haying, assisting in the dairy, etc.), in addition to work not of a farming nature (repairs, etc.) on properties not connected with either of the two farms.
In September of 1942 the plaintiff asked the defendant for permission to occupy the dwelling house at 371 Hawthorne Avenue. This property was owned by the defendant and was in close proximity to her farm properties. There is a barn to the rear of the house used in connection with farming operations. Permission was given to the plaintiff to occupy this house with his family as an incident of his employment. Previously he had occupied two other houses of the defendant which were less desirable.
On July 15 the plaintiff of his own accord terminated his employment with the defendant. His reason for doing so was that he did not like working in the dairy. The defendant told him that she would then require his living quarters for his successor. This did not deter the plaintiff from his resolve to quit his job.
For the past few years the plaintiff's base pay in cash has been $160 a month, of which $135 represented compensation for work on the farms and $25 for services rendered the defendant in connection with her nonfarming properties. In addition, the rental value of the plaintiff's occupancy of the Hawthorne Avenue house has been carried at $20 a month over and above his cash compensation. This modest rental stipend was fixed by the defendant, and acquiesced in by the plaintiff, with a mind to the federal income tax law. Hence the plaintiff's total compensation for purposes of record was on a monthly basis of $180. Milk and potatoes purchased by the plaintiff from the farms were charged off in nominal amounts against his cash compensation. *Page 362 
It is expressly found that the plaintiff's services, and his occupancy of a house conveniently located in reference to all the defendant's properties, were a necessary incident to the defendant's farming operations as well as to her nonfarming enterprise. So also it is expressly found that the defendant retained the right to control and direct the plaintiff on matters relating to the upkeep, care and supervision of the Hawthorne Avenue house.
In view of the foregoing recital, which represents material facts found, the trier concludes:
1. The relationship between the defendant and the plaintiff relative to the latter's occupancy of the Hawthorne Avenue house was, according to the law of Connecticut, essentially that of master and servant and not landlord and tenant. See Guiel
v. Barnes, 100 Conn. 737.
2. The quoted exceptions to the regulation, in the light of the subordinate facts, are to be given a broad, practical and commonsense construction, and when such is given it clearly appears that the plaintiff and the dwelling house he occupies come within the orbit of both exceptions.
3. The Hawthorne Avenue house constitutes both a "housing accommodation situated on a farm" and a "dwelling space . . . in connection with the premises of which [it] is a part" within the broader meaning of the quoted exceptions to the regulation.
4. The plaintiff himself was "engaged for a substantial portion of his time in farming operations thereon" and otherwise was an employee "to whom the space [was] provided as part . . . compensation for the purpose of rendering services" within the broader meaning of the quoted exceptions to the regulation.
5. The defendant is not required to resort to other channels of the regulation promulgated by the Office of Price Administration to secure an eviction of the plaintiff.
6. On the facts found, the law of Connecticut relating to eviction has not been abrogated by any federal regulation of the Office of Price Administration.
7. The plaintiff is precluded from resorting to equity on the facts recited and found as the material subordinate facts.
Comments:
A. The plaintiff, as a practical measure, should accept forthwith *Page 363 
the housing accommodations made available to him by his mother.
B. Granting for the sake of argument that the defendant is a rich woman, as suggested by the plaintiff, she nevertheless has her rights which are entitled to consideration; the rich and poor alike are adjudged before the bar of the court according to the merits of their respective claims, and not otherwise.
C. The fact that the functioning of the Office of Price Administration was suspended by Congress between July 1 and July 25 is held not to effect the result herein obtained.
 In view of the foregoing the application for a temporary injunction is denied. No legitimate purpose would be served in attempting to preserve the status quo.